*Court of Oyer and Terminer, June, 1816, before the Hon. Jonas Platt.*

The People *vs.* Patrick Blake.   *Murder.*

### CASE.

Circumstan-
ces, the srme
evidence in
murder as in
i nferior offen-
ces.

THE prisoner was arraigned on an indictment charging him with the murder of Margaret, his wife, and pleaded not guilty.

The facts of the case appeared as follows: the prisoner and the deceased occupied a house in Anthony street, in company with Catharine M'Gee and Jane M'Fall : they occupied the same room both for the business of the day, and the repose of the night.

On the 22d of April, 1816. in the afternoon, the wife of the prisoner was in bed, being indisposed, or in a state of intoxication.   Between 8 and 9 o'clock the prisoner returned home from his work, the deceased being still in bed, and the two women in the room.

Mrs. M'Gee proceeded to get supper, and after the prisoner, Jane M'Fall, and Catharine M'Gee, had partook of it, Catharine went to the bed-side for the purpose of tying a bandage round the head of the prisoner's wife, supposing her intoxicated, and in the act of tying on the bandage, discovered blood on the back of her hand ; the prisoner was then sitting upon the foot of the bed, and exclaimed, in an angry tone to let his wife alone.

They all three went to bed in the same room, the bed of one of the women, not being more than three feet from that occupied by the prisoner and his wife.   About 4

o'clock in the morning, the prisoner called to Catharine M'Gee, and observed he was afraid " Peggy was dead." He got up and lighted a candle, and upon examining, by putting his hand upon his wife's face, it was found that she was dead and stiff. The woman told him to go for the neighbors; he went out and did not return until several hours afterwards, and brought the coroner with him.

NEW-YORK,

The People
*vs.*
Pat. Blake.

The body was examined by the coroner in the presence of Dr. Cook, Dr. Stevens, Dr. Rogers, and Dr. Walker, and other gentlemen, who testified that the wound, which produced her death, was inflicted by the entrance of a knife or some other hard instrument, between the 5th and 6th ribs, near the pap of the breast. The wound was examined, and found to proceed in the direction of the heart, which it actually entered. There was a scar near the wound which appeared to be of considerable age, and was said to have been occasioned by a wound inflicted in a previous quarrel with the prisoner.

The coroner examined the prisoner, and requested him to take off his coat, and blood was discoved on his shirt sleeve, and in the roots of his finger nails. To answers to how the blood came there, he said he did not know—was careless and stupid. One of the Police magistrates found a jack-knife on the premises, which was bloody, and which the prisoner confessed belonged to him. The prisoner was arrested and committed to Bridewell; the knife was taken out of his waistcoat pocket, and had some appearance of blood on it, and was such a knife as might inflict a similar wound.

It was proved that the deceased was in habits of intoxication.

NEW-YORK.

The People,
vs.
Pat. Blake.

It was also proved that the prisoner and his wife sometimes quarrelled, but *generally* lived peaceably together.

## LAW.

For the doctrine of circumstantial evidence in relation to murder, vide Fost 225—290. 1 Hale, 455–471 2 Leach, 569. Kel. 227—50. 1 Hawk. Ch. 31. § 32. 6 St. Tr. 201. I Stra 499, Chitty, vol. 1. p. 563. vol.3. p. 174. Selfridge's trial, pamphlet form, and see also the Hon. C.D. Colden's charge to the Jury, in Goodwin's trial, pamphlet form,by Sampson.

His Honor, Judge *Platt*, observed, that the law upon the subject of murder was well settled. Murder was defined to be the killing of a person in the peace of the people, with malice aforethought, either express or implied; and whether the prisoner was guilty of the murder of his wife, or not guilty was the question now before them; that positive proof or very satisfactory circumstantial evidence, was necessary to convict a prisoner of this crime; that this was a dark and mysterious transaction that involved it in doubt, yet there were many circumstances in his favor. The prisoner has told but one story—has never appeared to be alarmed—has never, so far as appears by the evidence, attempted to conceal any thing—made no attempts to escape. It was possible the deceased might have been murdered before the prisoner returned in the evening—it might have been done in the night by one of the women in the house. In all these cases, however improbable they may be, room is afforded for doubt; that circumstantial evidence had the same operation in capital cases as those of an inferior grade.

The Jury returned a verdict of not guilty, in favor of the prisoner.